# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| **United States of America,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Criminal Action Number** |
| ) | **12-00229-01-CR-W-BP** |
| **Russell D. Blackburn,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is the MOTION TO SUPPRESS EVIDENCE WITH SUGGESTIONS (Doc. #19) filed on December 10, 2012, by defendant Russell D. Blackburn ("Blackburn"). On February 6, 2013, the undersigned held an evidentiary hearing on Blackburn's motion. Blackburn was present and represented by his counsel, Assistant Federal Public Defender Stephen Moss. The government was represented by Special Assistant United States Attorney Shalanda Smith. At the evidentiary hearing, two witnesses were called by the government: Officer Phillip Leslie and Detective Kevin Lange, both with the Blue Springs, Missouri Police Department. Additionally, the following exhibits were admitted into evidence:

| Number | Description |
|---|---|
| Gov't Ex. #1 | Dash camera videotape |
| Gov't Ex. # 3 | *Miranda* waiver form |
| Def't Ex. # 10 | Police report |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

## PROPOSED FINDINGS OF FACT

1. On June 29, 2012, Officer Phillip Leslie was employed with the Blue Springs, Missouri Police Department as a patrol officer. Tr. at 5.

2. Prior to that date, Officer Leslie had twelve years of experience as a patrol officer. Tr. at 4-5, 29.

3. On June 29, 2012, at approximately 2:56 a.m., was patrolling by himself the area near the intersection of Woods Chapel Road and Kingsridge Road in Blue Springs. Tr. at 5-6.

4. Officer Blackburn observed two men near the gas pumps at the Quik Trip located at 1128 NW Woods Chapel Road. Tr. at 6.

5. Both men were on foot and there were no vehicles in the Quik Trip parking lot or at the gas pumps. Tr. at 6-7.

6. The two men were standing less than two feet apart. Tr. at 6-7.

7. One of the men (later identified as Blackburn) had a large backpack "bulging out like it was full of items." Tr. at 6.

8. The area where Blackburn and the other man were seen had experienced a large number of car larcenies, usually occurring in the early morning hours between 10:00 p.m. and 6:00 a.m. Tr. at 7, 18, 20-21.

9. Officer Leslie knew from experiences that individuals robbing cars would often secret stolen contraband in backpacks. Tr. at 7, 18.

10. Because of the late hour, the fact that the men were both on foot, and were talking so close to one another, Officer Leslie also believed that the two men might be engaged in a drug transaction. Tr. at 18-19.

11. After the men noticed the patrol car, Officer Leslie drove away from the area and then turned around to return to see what the men would do when they thought the officer had left. Tr. at 7.

12. When Officer Leslie returned to the scene, he noted that one man was walking northbound across the parking lot and Blackburn was walking westbound on Valley View Road. Tr. at 7.

13. Officer Leslie decided to speak with Blackburn and conduct a "pedestrian check." Tr. at 7-8, 23-24.

14. The place where Officer Leslie approached Blackburn had only limited lighting. Tr. at 9.

15. During the conversation with Blackburn, Officer Leslie saw a bulge in Blackburn's waistband that he thought "looked like the shape of a handgun." Tr. at 9-12, 29-30.

16. Officer Leslie asked Blackburn what was in his waistband and Blackburn replied that it was a BB gun. Tr. at 10-11.

17. At that point, Officer Leslie told Blackburn not to move. Tr. at 10.

18. Officer Leslie then approached Blackburn to perform a frisk to ensure that Blackburn was only carrying a BB gun and, as Officer Leslie took control of Blackburn's hands, Blackburn stated that it was not a BB gun, but instead was a 22 caliber pistol. Tr. at 10, 12.

19. After handcuffing Blackburn, Officer Leslie performed a frisk of Blackburn and discovered a fully loaded 22 caliber handgun in Blackburn's waistband. Tr. at 10, 12-13.

20. Subsequent questioning and a search of Blackburn revealed that he was carrying other weapons (a knife) and contraband (marijuana). Tr. at 14-15.

21. Blackburn told Officer Leslie that he had obtained the firearm from a friend and did not know if it was stolen. Tr. at 17.

## Conclusions of Law

In his motion to suppress, Blackburn asserts that Officer Blackburn violated his constitutional rights in undertaking a warrantless seizure and search of Blackburn on June 29, 2012. Certainly, the Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. CONST. amend. IV. As made clear in the Fourth Amendment, however, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446 (1960). Nonetheless, as the United States Supreme Court pointedly noted over one hundred years ago:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

*Union Pacific Railroad Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001 (1891).

3

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. In this case, of course, Officer Leslie did not have a warrant to seize or search Blackburn. However, over the years, many exceptions to the warrant requirement have been recognized. Nonetheless, the Supreme Court has cautioned:

> [S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.

*Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 1716 (2009) (*quoting Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514 (1967)).

In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968), the Supreme Court held that a law enforcement officer can stop and briefly detain a person for investigatory purposes, even without a warrant, if the officer has a reasonable suspicion – supported by articulable facts – that criminal activity "may be afoot," even if the officer lacks probable cause for an arrest. *Id*. at 30, 88 S.Ct. at 1884. However, the officer conducting such an investigatory stop must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id*. at 27, 88 S.Ct. at 1883. Moreover, the mere fact that an officer's suspicion or hunch, in fact, was well-founded is not dispositive for a constitutional analysis; rather, the Fourth Amendment requires "some level of objective justification for making the stop." *INS v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763 (1984). In determining whether an officer had a "particularized and objective basis' for suspecting legal wrongdoing," courts must look at the totality of the circumstances, allowing officers to draw on their experience and training. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750 (2002).

4

However neither *Terry* nor the Fourth Amendment come into play during the initial encounter between Officer Leslie and Blackburn. It is well-settled that "[l]aw enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200, 122 S.Ct. 2105, 2110 (2002). Specifically, "mere police questioning does not constitute a seizure, . . . [s]o long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual." *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386 (1991) (*quoting*, *in part*, *California v. Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 1552 (1991)). In this case, Officer Leslie's initial approach to Blackburn and his conversational questions simply do not implicate constitutional protection.[1]

However, the Fourth Amendment does come into play "when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Bostick*, 501 U.S. at 434, 111 S.Ct. at 2386. In this case, that moment occurred when Officer Leslie told Blackburn "not to move" after seeing the bulge in Blackburn's waistband. That action (and the immediately ensuing frisk) must be justifiable – if at all – under *Terry*.

---

[1] During the evidentiary hearing, Blackburn made a point of the fact that Officer Leslie was in uniform, was armed, and did not specifically tell Blackburn that he was free to leave and free to not talk. However, the Eighth Circuit has noted that "[t]here is no *per se* requirement that an officer inform a citizen of his right to refuse consent, and there is no presumption that consent is invalid where given without an explicit notification of the right to refuse. *United States v. Vera*, 457 F.3d 831, 834 -835 (8th Cir. 2006). Moreover, the Supreme Court has observed:

> While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response.

*INS v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762 (1984).

At the time that Officer Leslie seized and searched Blackburn, he was aware that:

- Blackburn was in an area at 3:00 a.m. where a number of car larcenies had occurred during overnight hours;

- Blackburn was on foot;

- Blackburn was carrying a backpack – a manner used by car thieves to collect property stolen from vehicles;

- Blackburn had been seen at a Quik Trip parking lot engaged in a close conversation with another pedestrian in a manner suggestive of a drug transaction;

- Blackburn has a suspicious bulge in his waistband that Officer Leslie believed looked like the outline of a firearm.

In addition, Officer Leslie was alone in his encounter with Blackburn which took place in a poorly lit, relatively deserted area late at night.

Viewing the totality of the circumstances, the Court concludes that Officer Leslie did possess the requisite reasonable suspicion to briefly seize Blackburn and perform a protective frisk of Blackburn's person. The Eight Circuit has repeatedly "concluded that the fact that a suspect was detained late at night by a lone officer in a poorly lit area adds to the reasonableness of an officer's conclusion that the person detained should be frisked for weapons." *United States v. Roggeman*, 279 F.3d 573, 578 (8th Cir. 2002) (citing cases). Moreover, the Eighth Circuit likewise repeatedly has found that "a law enforcement officer's observation of a bulge to be a substantial factor" in supporting a finding of reasonable suspicion. *Id*. at 579 (citing cases). As summarized by the *Roggeman* court:

> The [Supreme] Court explained in *Terry* that the great risks that investigatory detentions present to officer safety tip the scales balancing the government's interest in protecting law-enforcement officers against the individual's right to personal security in favor of finding limited, protective searches to be constitutional.

*Id*. at 578.

6

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** the MOTION TO SUPPRESS EVIDENCE WITH SUGGESTIONS (DOC. #19) filed on December 10, 2012.

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

*/s/ John T. Maughmer*
**John T. Maughmer**
**United States Magistrate Judge**